**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **PHILLIP MARK SALYER,** | : | |
| **Plaintiff,** | : | **Case No. 2:04-cv-988** |
| **v.** | : | **Judge Holschuh** |
| **HONDA OF AMERICA MFG., INC.,** | : | **Magistrate Judge Abel** |
| **Defendant.** | : | |
| | : | |

<u>**Memorandum Opinion and Order**</u>

Plaintiff brings this action against Defendant alleging that Defendant terminated his employment in violation of the Family Medical Leave Act ("FMLA"). Plaintiff has also asserted supplemental state law claims arising out of his termination. This matter is before the Court on Defendant's motion for summary judgment with respect to Plaintiff's FMLA claim and for judgment on the pleadings with respect to Plaintiff's supplemental state law claims. (Doc. # 3). Additionally, this matter is before the Court on Plaintiff's request, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, for certain discovery. (Doc. # 7).

**I.  Background**

Plaintiff was hired by Defendant in 1997 to work in its production facility in Marysville, Ohio. (<u>Complaint</u> at ¶ 6). In 2003, Plaintiff was granted FMLA leave due to a work-related elbow injury and subsequent surgery. (<u>Id.</u> at ¶ 7). Plaintiff also received workers' compensation benefits as a result of the elbow injury. (<u>Id.</u>).

After exhausting his FMLA leave in 2003, Plaintiff returned to work for Defendant. (<u>Id.</u> at ¶¶ 8-9). Plaintiff contends that, upon his return, he provided Defendant with medical

restrictions from his treating physician related to his elbow injury.  (Id. at ¶ 8).  Plaintiff alleges

that Defendant nevertheless assigned Plaintiff "to job duties that it knew or should have known

were in violation of the medical restrictions and would exacerbate Plaintiff's elbow condition."

(Id.).

       In March 2004, Plaintiff contends that he took time off work to care for ill family

members.  (Id. at ¶ 10).  On April 17, 2004, Plaintiff was suspended pending an investigation

regarding his absences.  (Id.).  Thereafter, on April 21, 2004, Plaintiff was terminated.  (Id. at ¶

11).  Plaintiff was, however, informed that he had a right to a binding appeal through

Defendant's Review Panel procedure.  (Id.).

       On May 5, 2004, Plaintiff requested and received a Review Panel hearing.  (Id. at ¶ 13).

Plaintiff alleges that Defendant's representative presented the following information in favor of

upholding the decision to terminate Plaintiff:

>     (a).  All absences through Plaintiff's career, including absences
>that were previously approved as FMLA-qualifying by Defendant;
>
>     (b).  All absences throughout Plaintiff's career, including absences
>that were caused by injuries for which Plaintiff had received
>Workers Compensation benefits; and
>
>     (c).  All absences throughout Plaintiff's career with Defendant,
>including absences caused by working Plaintiff against his medical
>restrictions.

(Id.).  Defendant's Review Panel upheld the decision to terminate Plaintiff's employment.  (Id. at

¶ 14).


**II.  Discussion**

2

### A. Defendant's Motion for Summary Judgment

#### 1. Standard

Defendant has moved for summary judgment with respect to Plaintiff's FMLA claim.

Although summary judgment should be cautiously invoked, it is an integral part of the Federal

Rules, which are designed "to secure the just, speedy and inexpensive determination of every

action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The

standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a

matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains

for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury

if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467

(1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also

Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine

if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir.

1978). The court's duty is to determine only whether sufficient evidence has been presented to

make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the

credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing

that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law.  Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003).  All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986);  Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-48 (emphasis in original).  A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties."  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).  See also Anderson, 477 U.S. at 248.  An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.  The nonmoving party must

demonstrate that "there is a genuine issue for trial," and  "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252.  The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993).  The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence.  Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

### 2.  Application

The FMLA entitles an eligible employee to take up to twelve weeks of leave during any

twelve-month period under certain conditions.[1]  29 U.S.C. § 2612(a).  The FMLA also makes it

unlawful for an employer to interfere with an employee's rights as established by the FMLA:

> (a) Interference with rights
>
>> (1) Exercise of rights
>>
>> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
>>
>> (2) Discrimination
>>
>> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a).  In this case, Plaintiff alleges that Defendant violated § 2615(a)(1) by using

Plaintiff's FMLA-qualified leave as a "negative factor" in its decision to terminate his

employment.  (Compl. at ¶ 21).

Defendant argues that it is entitled to summary judgment on Plaintiff's FMLA claim

because Plaintiff was not an "eligible employee," as defined by the FMLA.  Under the FMLA,

an "eligible employee" is:

> an employee who has been employed -
>
> (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and
>
> (ii) for at least 1,250 hours of service with such employer during the previous 12-month period.

---

[1]For example, an employee is entitled to leave if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).

29 U.S.C. § 2611(2)(A).  Defendant contends that Plaintiff was terminated due to absences in March 2004 and that, because Plaintiff did not work at least 1250 hours during the prior 12 month period, he was not an "eligible employee."

Plaintiff apparently concedes that he did not qualify for FMLA leave in March 2004. (See Compl. at ¶ 9; Plaintiff's Memorandum in Opposition, at p. 14).  However, Plaintiff argues that his FMLA claim is not based on his March 2004 absences.  Instead, Plaintiff argues that his claim is based on the FMLA-qualified leave that he took during the calendar years 2002 and 2003.  (Compl. at ¶¶ 18-21).  There is no dispute that Plaintiff was an "eligible employee" when he took FMLA leave in 2002 and 2003.  (See Answer at ¶¶ 7, 16).

Defendant nevertheless argues that, because the Review Panel hearing occurred after the decision to terminate Plaintiff's employment had been made, any evidence presented during the Review Panel hearing, or relied upon by the Review Panel, cannot be used to support Plaintiff's FMLA claim.  However, contrary to Defendant's suggestion, it is unclear whether Plaintiff's claim is based solely on the evidence presented during the Review Panel hearing.  In his complaint, Plaintiff specifically alleges that Defendant violated the FMLA by "utilizing Plaintiff's FMLA-qualifying leave time as a 'negative factor' *leading to* discharge and/or a failure to rehire...."[2]  (Compl. at ¶ 21(a) (emphasis added)).

In any event, this Court notes that a similar argument was recently rejected by the Court. In Welty v. Honda of America Mfg., Inc., Case No. 2:05-cv-60, 2005 WL 1334923 (S.D. Ohio

---

[2] Plaintiff offers a separate allegation with respect to the Review Panel; Plaintiff alleges that Defendant violated the FMLA by "utilizing Plaintiff's FMLA-qualifying leave time as a 'negative factor' to convince the Review Panel to uphold the decision to discharge and/or fail to rehire Plaintiff...."  (Compl. at ¶ 21(b)).

7

June 6, 2005), the plaintiff was terminated by the defendant, Honda of America Mfg., Inc. due to certain absences.  Similar to this case, the plaintiff in Welty alleged that, during a review panel hearing, the defendant improperly relied on prior FMLA-qualifying leave to support defendant's decision to terminate his employment.  The Court concluded that, "because Defendant apparently used as a negative factor Plaintiff's prior FMLA leave as a component in defending the discharge decision – whether to finalize that decision or to preclude rehiring – Plaintiff can assert a cause of action for violation of 29 C.F.R. § 825.220(b) and (c)."[3] Welty, 2005 WL 1334923, *4.  Therefore, Defendant's argument in this regard is without merit.

Finally, Defendant argues that, in any event, Plaintiff has failed to establish a causal connection between the FMLA-qualified leave that was taken in 2002-2003 and his termination in 2004.[4]  However, Plaintiff has requested, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, that Plaintiff be permitted to conduct discovery before the Court rules on Defendant's motion for summary judgment.  In particular, Plaintiff requests discovery with respect to:

> (1) all of the reasons for Salyer's discharge;
>
> (2) the nature of the Review panel procedure itself (and Honda's adherence to it);
>
> (3) the contents of the presentation before the Review Panel in

---

[3]Pursuant to 29 C.F.R. § 825.220(b), "[a]ny violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.220(b).  Section 825.220(c) then provides that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions...."  29 C.F.R. § 825.220(c).

[4]In a related argument, Defendant contends that Plaintiff's claim is a retaliation claim subject to the McDonnell-Douglas burden-shifting analysis.  (Response of Defendant ... to Plaintiff's Motion for Leave to Submit Supplemental Authority, at p. 5).  However, this Court need not, at this time, resolve the issue due to the pending Rule 56(f) request.

Salyer's case; and

(4) the effect that presentation had on Panel members.

(Plaintiff's Memorandum in Opposition, at pp. 19-20; Affidavit of Gary A. Reeve, at ¶ 5,

attached to Plaintiff's Memorandum in Opposition).

The party seeking additional discovery bears the burden of demonstrating why such

discovery is necessary.  Summers v. Leis, 368 F.3d 881, 887 (6th Cir. 2004); Scott v. Fairbanks

Capital Corp., 284 F. Supp.2d 880, 897 (S.D. Ohio 2003).  In particular, Plaintiff must indicate

his need for the discovery, what material facts he hopes to uncover and why he has not

previously discovered the information.  See Summers, 368 F.3d at 887; Scott, 284 F. Supp.2d at

897.

Plaintiff's counsel states that the additional discovery will be relevant to whether prior

FMLA-qualified leave was used as a "negative factor" in Defendant's decision to terminate

Plaintiff's employment.  (Reeve Aff. at ¶ 5).  Further, Plaintiff's counsel explains that

Defendant's motion for summary judgment was filed one day after Defendant filed its answer

and that "[n]o discovery of any kind has been requested yet ... as the Rule 26 discovery

conference has yet to even take place."  (Id. at ¶¶ 3-4).

Because this case is still in the early stages and little, if any, discovery has occurred and,

further, because the discovery requested by Plaintiff is relevant to his FMLA claim, this Court

concludes that Plaintiff's Rule 56(f) request has merit.  This Court will therefore deny

Defendant's motion for summary judgment without prejudice to renewal following the

completion of the requested discovery.

**B.  Defendant's Motion for Judgment on the Pleadings**

### 1. Standard

Defendant has also moved for judgment on the pleadings with respect to Plaintiff's state law claims. Motions for judgment on the pleadings, brought pursuant to Federal Rule of Civil Procedure 12(c), are evaluated in much the same way as Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted. See Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 511-12 (6th Cir. 2001); Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). The purpose of a motion under either rule is to test the sufficiency of the complaint. When determining the sufficiency of a complaint, a court will apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002); Ziegler, 249 F.3d at 512.

When considering a motion for judgment on the pleadings, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Eubanks v. CBSK Financial Group, Inc., 385 F.3d 894, 897 (6th Cir. 2004); Grindstaff, 133 F.3d at 421. However, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. Id. The Court will, however, indulge all reasonable inferences that might be drawn from the pleading. See Saglioccolo v. Eagle Ins. Co., 112 F.3d 226, 228 (6th Cir. 1997).

### 2. Ohio Revised Code Section 4123.90[5]

---

[5]Although the Complaint cites to Ohio Revised Code section 4123.80, it is clear that section 4123.90 was the intended citation. (See Plaintiff's Memorandum in Opposition, at p. 10).

Plaintiff alleges that Defendant violated Ohio Revised Code § 4123.90 by using workers' compensation-related absences to "sway the opinion of Defendant's Review Panel against plaintiff and in favor of upholding the decision to discharge." (Compl. at ¶¶ 25-26). Section 4123.90 provides, in relevant part:

> No employer shall discharge, demote, reassign, or take any
> punitive action against any employee because the employee filed a
> claim or instituted, pursued or testified in any proceedings under
> the workers' compensation act for an injury or occupational
> disease which occurred in the course of and arising out of his
> employment with that employer....

Ohio Revised Code § 4123.90.

Initially, this Court notes that Defendant's motion for judgment on the pleadings appears to be based, in large part, on Defendant's contention that Plaintiff was terminated for absences in March 2004, *i.e.,* absences that were unrelated to Plaintiff's prior workers' compensation-related absences. Defendant therefore contends that any evidence presented to the Review Panel should not be considered. However, as was discussed *supra*, it is not clear that Plaintiff's claim is based solely on evidence presented to the Review Panel and, in any event, this Court has already concluded that it is permissible to assert claims based on the decision of the Review Panel. See Welty, 2005 WL 1334923, *4.

Defendant also argues that Plaintiff's claim under § 4123.90 must be dismissed because Plaintiff's termination was not "directly precipitated" by Plaintiff's workers' compensation-related absences. (Defendant's Motion, at p. 6 (citing Markham v. Earle M. Jorgensen Co., 138 Ohio App.3d 484, 493 (Cuyahoga Cty. Ct. App. 2000)). While this Court agrees that, in order to support a claim under Ohio Revised Code § 4123.90, Plaintiff must show that, *inter alia*, a causal link exists between his workers' compensation claims and his termination, see White v.

11

Mt. Carmel Med. Ctr., 150 Ohio App.3d 316, 328 (Franklin Cty. Ct. App. 2002); Markham, 138 Ohio App.3d at 493, the Ohio Supreme Court has recognized that, in order to state a claim, it is enough for a plaintiff to allege: (1) that he was injured on the job, (2) that he filed a claim for workers' compensation, and (3) was discharged by that employer in contravention of § 4123.90. Wilson v. Riverside Hosp., 18 Ohio St.3d 8, 10 (1985).

In this case, Plaintiff has specifically alleged that he was injured on the job, (Compl. at ¶ 7), that he received workers' compensation benefits, (Id. at ¶ 8), and that he was terminated in violation of § 4123.90.  (Id. at ¶¶ 25-26).  This Court therefore concludes that Plaintiff's allegations are sufficient to survive Defendant's motion for judgment on the pleadings.

### 3.  Employer Intentional Tort

Plaintiff also alleges that Defendant intentionally assigned Plaintiff to work in positions contrary to his medical restrictions.  (Compl. at ¶¶ 8, 13, 28).  Ohio's Workers' Compensation Act provides relief for an employee's workplace injuries.  See Bee v. Toth Industries, Inc., 150 Ohio App.3d 184, 188 (Lucas Cty. Ct. App. 2002).  In return for compliance with the Workers' Compensation Act, employers are generally immune from liability arising from an employee's workplace injury.  See Ohio Revised Code § 4123.74.[6]  See also Bee, 150 Ohio App.3d at 188.

Nevertheless, the Ohio Supreme Court has recognized an intentional tort exception to the immunity provided to employers under Ohio Revised Code § 4123.74.  As explained by the Ohio Supreme Court, the act of intentionally injuring an employee is outside the purview of the

---

[6]Ohio Revised Code section 4123.74 provides, in relevant part: "Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury ...  received ... by any employee in the course of or arising out of his employment...."

12

Workers' Compensation framework.  State ex rel. Ohio AFL-CIO v. Voinovich, 69 Ohio St.3d

225, 230 (1994) (citing Brady v. Safety-Kleen Corp., 61 Ohio St.3d 624, 630 (1991)).  See also

Hannah v. Dayton Power & Light Co., 82 Ohio St.3d 482, 484 (1998).  In order to establish a

claim against an employer for an intentional tort, Plaintiff must show:

> (1) knowledge by the employer of the existence of a dangerous
> process, procedure, instrumentality or condition within its business
> operation;
>
> (2) knowledge by the employer that if the employee is subjected by
> his employment to such dangerous process, procedure,
> instrumentality or condition, then harm to the employee will be a
> substantial certainty; and
>
> (3) that the employer, under such circumstances, and with such
> knowledge, did act to require the employee to continue to perform
> the dangerous task.

Gibson v. Drainage Products, Inc., 95 Ohio St.3d 171, 175 (2002) (quoting Fyffe v. Jeno's Inc.,

59 Ohio St.3d 115 (1991)); Hannah, 82 Ohio St.3d at 484.

Defendant argues that Plaintiff has failed to properly plead a claim for an employer

intentional tort.  The Supreme Court of Ohio has "carve[d] out a heightened standard of review

for Civ. R. 12(b)(6) motions in the [employer] intentional tort context."  Byrd v. Faber, 57 Ohio

St.3d 56, 60 (1991).  With respect to the pleading requirement of an employer intentional tort,

the Ohio Supreme Court has held:

> [A] claim of intentional tort against an employer will be dismissed
> as failing to establish that the pleader is entitled to relief unless the
> complaint alleges facts showing that the employer: (1) specifically
> desired to injure the employee; or (2) knew that injury to an
> employee was certain or substantially certain to result from the
> employer's act and despite this knowledge, still proceeded.

Mitchell v. Lawson Milk Co., 40 Ohio St.3d 190, 193 (1988) (citations omitted).  Moreover,

13

"[u]nsupported *conclusions* that [defendant] committed an intentional tort are not taken as admitted by a motion to dismiss and are not sufficient to withstand such a motion. Mitchell, 40 Ohio St.3d at 193. Therefore, a plaintiff asserting an intentional tort claim against his employer must allege facts demonstrating the employer's intent with particularity. Id.

Initially, this Court notes that, in addition to workplace conditions that may be described as "universally hazardous," such as exposure to toxic chemicals or dangerous equipment, Ohio courts have recognized that a claim can be established when an employer forces an employee to work in an environment that violates the employee's valid medical restrictions. See Bee, 150 Ohio App.3d at 188; Sinea v. Denman Tire Corp., 135 Ohio App.3d 44, 58 (Trumbull Cty. Ct. App. 1999). However, those cases do not address the heightened pleading requirement established by the Supreme Court of Ohio in Mitchell.

In this case, the complaint refers in a general way to "medical restrictions" and Defendant's "actions" as resulting in a conclusion that Defendant knew or should have known that it was assigning Plaintiff to work that was substantially certain to cause him serious physical harm. (Compl. at ¶¶ 8, 28). Notice pleading and conclusory allegations may be sufficient for some claims, but not a claim of employer intentional tort under Ohio law. Mitchell, 40 Ohio St.3d at 193. The claim, as stated, must be particularized with specific facts that would be sufficient to show that the employer "specifically desired to injure the employee." Id.

There is nothing in Plaintiff's complaint that describes the alleged "medical restrictions," the nature of the work performed by Plaintiff prior to his injury, the nature of the work performed after his injury, the complaints, if any, he made to his employer and when he made them, how long he was required to perform the work, the nature and extent of the alleged injuries

14

caused by the work or any other facts that would tend to show a particularized claim of employer intentional tort.  This Court therefore concludes that Defendant is entitled to judgment on the pleadings with respect to this claim.

### 4.  Public Policy

Finally, Plaintiff alleges that Defendant terminated him in violation of Ohio's public policy.  In particular, Plaintiff alleges that Defendant violated the following "clear" public policies:

> a.  against utilizing absences caused by an employer's disregard for an individual employee's workplace safety against the employee to support a decision to discharge that employee;
>
> b.  against utilizing absences caused by injuries for which an employee received benefits under Workers Compensation against the employee to support a decision to discharge that employee; and
>
> c.  against utilizing absences caused by the commission of an employer intentional tort against an employee to support a decision to discharge that employee.

(Compl. at ¶ 34).

The Ohio Supreme Court first recognized an exception to the employment at will doctrine[7] for terminations which violate public policy in Greeley v. Miami Valley Maintenance Contractors, Inc., 49 Ohio St. 3d 228, 235 (1990).  In order to prevail on such a claim ("Greeley

_____

[7]Under the common law doctrine of employment at will, employment of a person hired for an indefinite period is "terminable at the will of either the employee or the employer . . . a discharge without cause does not give rise to an action for damages."  Wiles v. Medina Auto Parts, 96 Ohio St. 3d 240, 241 (2002) (citing Collins v. Rizkana, 73 Ohio St. 3d 65, 67 (1995)).  However, the right to terminate employees at any time is not absolute.  Fawcett v. G.C. Murphy & Co., 46 Ohio St. 2d 245, 249 (1976).  Employers cannot terminate employees for unlawful reasons.  Cavin v. Honda of Am. Mfg., Inc., 138 F. Supp. 2d 987, 990 (S.D. Ohio 2001) (citing Mers v. Dispatch Printing Co., 19 Ohio St. 3d 100, 103 (1985)), rev'd on other grounds, 346 F.3d 713 (6th Cir. 2003).

claim"), Plaintiff must establish:

> (1) a clear public policy manifested in the Ohio or United States Constitutions, a statute or administrative regulation, or in the common law (the "clarity element");
>
> (2) that the dismissal of employees under similar circumstances would jeopardize the public policy (the "jeopardy element");
>
> (3) that the discharge was motivated by conduct related to the public policy (the "causation element"); and
>
> (4) that the employer lacked a legitimate overriding business justification for the plaintiff's discharge (the "overriding justification element").

Collins v. Rizkana, 73 Ohio St. 3d 65, 69-70 (1995) (citation omitted).  The clarity and jeopardy elements are questions of law for the court to determine, while the causation and overriding justification elements are questions of fact.  Id. at 70.

### a. Workers' Compensation- Related Absences

As was noted *supra*, Plaintiff contends that Defendant violated Ohio's public policy by terminating him due to absences caused by injuries for which he received workers' compensation benefits.  (Compl. at ¶ 34).  There appears to be two potential grounds for this Greeley claim. First, Plaintiff appears to base the Greeley claim on Ohio Revised Code § 4123.90, which, as was noted *supra*, provides, in relevant part:

> No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer....

Ohio Revised Code § 4123.90.  Plaintiff also appears to argue that, even if there was no violation of § 4123.90, Defendant violated the public policy of Ohio as stated in Coolidge v. Riverdale

16

Local School Dist., 100 Ohio St.3d 141 (2003).

### i. Ohio Revised Code Section 4123.90

Ohio courts have recognized that § 4123.90 "clearly demonstrates a public policy against the discharge of employees for filing workers' compensation claims and in favor of enabling workers to utilize the workers' compensation system without sacrificing their employment." Hall v. ITT Automotive, 362 F. Supp.2d 952, 960 (N.D. Ohio 2005)(citations omitted). See also Simmons v. Wal-Mart Associates, Inc., Case No. 2:04-cv-51, 2005 WL 1684002 (S.D. Ohio July 19, 2005); Welty, 2005 WL 1334923, *9. This Court must therefore determine whether failing to recognize a Greeley claim would jeopardize this clear public policy.

When analyzing the jeopardy element of a Greeley claim that is based upon a statute, the issue is whether the remedies under the statute are adequate "to fully compensate an aggrieved employee who is discharged . . . in violation of the statute." Kulch v. Structural Fibers, Inc., 78 Ohio St. 3d 134, 155 (1997). When a statute adequately protects society's interest as expressed in the statute, the public policy is not jeopardized by the absence of a recognized action for wrongful discharge. Wiles v. Medina Auto Parts, 96 Ohio St. 3d 240, 244 (2002).

The Ohio Supreme Court has further explained that "'the issue of adequacy of remedies' becomes a particularly important component of the jeopardy analysis" when a statute is the source of the public policy in a plaintiff's Greeley claim and that statute provides both rights and remedies to the plaintiff for its breach. Wiles, 96 Ohio St. 3d at 244 (quoting Collins, 73 Ohio St. 3d at 73). Thus, the issue in this case is whether the absence of a Greeley claim based on Ohio Revised Code § 4123.90 would seriously compromise the statutory objectives of § 4123.90. Following Wiles, Ohio courts appear to be split as to whether a public policy

17

claim can be maintained for a violation of § 4123.90.  Compare Sidenstricker v. Miller Pavement Maintenance, Inc., 158 Ohio App.3d 356 (Franklin Cty. Ct. App. 2004) with Coon v. Technical Construction Specialties, Inc., Case no. 22317, 2005 WL 1875811 (Summit Cty. Ct. App. August 10, 2005).  However, as recognized by the United States District Court for the Northern District of Ohio in Hall, although the Ohio Supreme Court has neither approved nor disapproved a Greeley claim premised on the violation of § 4123.90, "Ohio appellate and federal district courts have routinely recognized [such] ... claims...."  Hall, 362 F. Supp.2d at 961 (citations omitted).

It appears that a majority of Ohio courts have concluded that a plaintiff can maintain a public policy claim premised on § 4123.90.  See Sidenstricker, 158 Ohio App.3d 356; Schramm v. Appleton Papers, Inc., No. 20940, 2005 WL 1693935, *5 (Montgomery Cty. Ct. App. July 15, 2005); Nickerson-Mills v. Family Medicine of Stark Cty., No. 2004 CA 00389, 2005 WL 1635142, *4 (Stark Cty. Ct. App. July 11, 2005).   For example, in Sidenstricker, the court noted that a claim under § 4123.90 allows only equitable relief and held that, therefore, "[a] plaintiff may pursue a common-law wrongful-discharge claim for violation of public policy expressed in R.C. 4123.90 in addition to or in lieu of pursuing a statutory retaliation claim directly under R.C. 4123.90."  Sidenstricker, 158 Ohio App.3d at 363.  In fact, this Court has also recognized that such claims can be maintained.[8]  See Simmons, 2005 WL 1684002, *19; Welty, 2005 WL 1334923, *9.

---

[8]This Court notes, however, that because this is a motion for judgment on the pleadings, the Court must construe the complaint in the light most favorable to Plaintiff and accept all well-pleaded material allegations in the complaint as true.  Eubanks, 385 F.3d at 897; Grindstaff, 133 F.3d at 421.  Therefore, this Court will not resolve any factual disputes with respect to the "causation" and "overriding justification" elements of Plaintiff's Greeley claim at this time.

18

### ii.  **Coolidge**

Plaintiff also appears to argue that, even if Defendant did not technically violate §

4123.90, the use of workers' compensation-related absences to support the decision to terminate

Plaintiff's employment nevertheless violates Ohio's public policy.  In support of this position,

Plaintiff cites Coolidge.  In Coolidge an Ohio teacher suffered a work-related injury and was

receiving temporary total disability benefits.  When the teacher exhausted all leave available

under her employment contract, the school board terminated her.  The Ohio Supreme Court first

noted that "[a]llowing an employer to discharge an employee for being absent ... as the result of

a work-related injury would allow an employer to indirectly fire an employee for filing a

workers' compensation claim...."  Coolidge, 100 Ohio St.3d at 147 (quoting Coleman v. Safeway

Stores, Inc., 242 Kan. 804, 815-16 (1988)).  The Ohio Supreme Court then held that, "the policy

of protection embodied in the Workers' Compensation Act can be effectuated only if an

employer is not permitted to discharge an employee for being absent from work due to an

allowed injury...."

Although Coolidge dealt specifically with temporary total disability benefits, its

reasoning is equally applicable in this case.  The holding in Coolidge represents the "basic

expressions of the policy that undergirds the workers' compensation structure."  Coolidge, 100

Ohio St.3d at 66.  The rule prohibiting the discharge of an employee based on absences for an

allowed injury is necessary to "protect the right of employees to freely pursue workers'

compensation benefits without fear of reprisal...."  Id., at 66-67.  This Court therefore concludes

that Plaintiff has properly asserted a Greeley claim against Defendant based on its use of

workers' compensation-related absences to support its decision to terminate Plaintiff's

employment.[9]

### b. Work Environment-Related Absences

Plaintiff also asserts two public policy claims related to his work environment.  Plaintiff alleges that, in support of its decision to terminate Plaintiff's employment, Defendant violated Ohio's public policy by using: (1) absences caused by Defendant's disregard for Plaintiff's workplace safety, and (2) absences caused by Defendant's commission of an employer intentional tort.  (Compl. at ¶ 34).  Defendant argues that Plaintiff has failed to establish a public policy claim with respect to either claim.

### i. Employer Intentional Tort

As noted by Plaintiff, the clarity element of a Greeley claim can be satisfied by the existence of common law prohibitions.  See Wiles, 96 Ohio St.3d at 242 (the "clear public policy sufficient to justify a wrongful-discharge claim "may also be discerned as a matter of law based on other sources, such as ... the common law").  Plaintiff contends that the common law claim for an employer intentional tort establishes Ohio's clear public policy against terminating an employee based on absences caused by an employer's intentional tort.

Assuming that Plaintiff is correct that Ohio's public policy prohibits discharging an employee due to absences caused by an employer intentional tort, Plaintiff has nevertheless failed to establish the jeopardy element of this Greeley claim.  Plaintiff has not identified why the remedies available under an employer intentional tort claim are not adequate to protect the public policy underlying such a claim.  Therefore, because Plaintiff has failed to establish the jeopardy element of this Greeley claim, Defendant's motion for judgment on the pleadings is

---

[9] See *supra*, note 8.

meritorious.

### ii.  Safe Workplace

In support of his claim that Ohio's public policy forbids an employer from terminating an employee based on absences caused by an unsafe working environment, Plaintiff cites Blair v. Honda of America Mfg., Inc., Case No. 14-01-33, 2002 WL 396531 (Union Cty. Ct. App. March 14, 2002).  Blair, in turn, relies on Kulch, wherein the Ohio Supreme Court concluded that "[t]he public policy of [Ohio] demands that employees be provided with a safe work environment and that unsafe working conditions be corrected."  78 Ohio St.3d at 152.

However, Plaintiff does not contend that his working environment was, as a general matter, unsafe.  Instead, Plaintiff contends that the positions to which Defendant assigned Plaintiff were unsafe due to Plaintiff's specific medical restrictions.  This claim appears to be indistinguishable from Plaintiff's Greeley claim based on an employer intentional tort.[10]  In both claims, Plaintiff contends that Defendant improperly terminated Plaintiff based on absences that were caused by a failure to abide by Plaintiff's medical restrictions.  Like Plaintiff's Greeley claim based on an employer intentional tort, Plaintiff has failed to establish the jeopardy element of this Greeley claim.  Therefore, Defendant's motion for judgment on the pleadings is meritorious in this regard.


**WHEREUPON**, Defendant's motion for summary judgment (Doc. # 3) is **DENIED** without prejudice to renewal.  Plaintiff will be permitted to engage in discovery pursuant to his

---

[10]In fact, the case relied upon by Plaintiff, Blair, involved an employer intentional tort and corresponding public policy claim.  Blair, 2002 WL 396531.

request (Doc. # 7) under Rule 56(f) of the Federal Rules of Civil Procedure.[11]  Finally,

Defendant's motion for judgment on the pleadings (Doc. # 3) is **GRANTED** in part and

**DENIED** in part.  With respect to Plaintiff's employer intentional tort claim, as well as his

<u>Greeley</u> claims involving Defendant's alleged use of absences related to an unsafe work

environment and an employer intentional tort, Defendant's motion is **GRANTED**.  In all other

respects, Defendant's motion is **DENIED**.


**IT IS SO ORDERED.**


<u>September 23, 2005</u>                                    <u>/s/ John D. Holschuh      </u>
                                                  John D. Holschuh, Judge
                                                  United States District Court

_____

[11]The Court merely concludes that Plaintiff is entitled to seek discovery in order to respond to Defendant's motion for summary judgment.  The Court  does not intend to preliminarily rule on the merits of any particular discovery requests; any discovery-related issues/disputes will be resolved by the Magistrate Judge.  <u>See General Order on Magistrate Judges,</u> Eastern Division Order No. 91-3 (July 3, 1991).  <u>See also</u> S.D. Ohio Civ. R. 72.1.