IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PHILLIP MARK SALYER, | : | |
| Plaintiff, | : | Case No. 2:04-CV-988 |
| v. | : | Judge Holschuh |
| HONDA OF AMERICA MFG., INC., | : | Magistrate Judge Abel |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Phillip Salyer filed suit against Defendant Honda of America Manufacturing, Inc. ("HAM"), alleging that HAM terminated his employment in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Plaintiff also asserted supplemental state law claims arising out of his termination. This matter is before the Court on HAM's motion for summary judgment on grounds of judicial estoppel. (Record at 26). HAM argues that because Salyer failed to disclose the existence of this suit in his Chapter 13 bankruptcy proceedings, the doctrine of judicial estoppel bars his claims. For the reasons set forth below, the Court grants HAM's motion.

**I.      Factual Background and Procedural History**

Phillip Salyer worked as a Production Associate at HAM's Marysville facility from 1997 until April 21, 2004, when he was terminated for excessive absences. (Compl. at ¶¶ 6, 10-11). This lawsuit arises out of his termination. The facts relevant to the pending motion are undisputed.

Over the past few years, Salyer and his wife, Holly, have jointly filed two Chapter 13 bankruptcy petitions in the United States Bankruptcy Court for the Southern District of Ohio. The first was filed on August 8, 2003. Jeffery M. Kellner was appointed as trustee. (Kellner Aff. ¶¶ 1-2; Ex. A to Def.'s Mot. Summ. J.). A repayment plan was confirmed on November 19, 2003. Salyer was terminated the following April. On August 31, 2004, the Bankruptcy Court agreed to modify the payment plan based on Salyer's loss of employment. (Exs. 2 and 3 to Fusonie Aff.; Ex. 2 to Def.'s Mot. Summ. J.).

On October 13, 2004, Salyer filed this lawsuit against HAM, asserting claims of FMLA violations, retaliation for filing a workers' compensation claim, employer intentional tort, and wrongful discharge in violation of Ohio's public policy. Salyer did not tell Gary Reeve, the attorney who filed suit on his behalf, about his pending bankruptcy proceedings. Likewise, he did not tell John Cannizzaro, his bankruptcy attorney, or Kellner, the bankruptcy trustee, about his suit against HAM and made no effort to supplement his schedule of assets and liabilities or his Statement of Financial Affairs. According to Salyer, he did not disclose the lawsuit because his bankruptcy case was in the process of being dismissed. (Salyer Aff. ¶ 2; Ex. to Pl.'s Mem. in Opp'n).

On December 10, 2004, HAM filed a motion for summary judgment on the FMLA claim and motion for judgment on the pleadings as to the state law claims. On January 3, 2005, Kellner moved to dismiss the first bankruptcy case based on Salyer's failure to make the required payments; the motion was granted on February 9, 2005. (Ex. 1 to Kellner Aff.).

On February 2, 2005, Salyer and HAM agreed to stay all discovery pending resolution of HAM's motion for summary judgment and motion for judgment on the pleadings. Reeve

explained to Salyer that the case was "'on hold' for an indefinite period of time" and that there was a possibility that the court would dismiss his case as a result of HAM's motion. (Reeve Aff. ¶ 3; Ex. to Pl.'s Mem. in Opp'n).

On April 25, 2005, while HAM's motion was still pending, Salyer and his wife filed their second Chapter 13 bankruptcy petition. Kellner was again appointed as trustee. (Kellner Aff. ¶¶ 1,4). In the petition, Salyer represented, under penalty of perjury, that he had no "contingent and unliquidated claims." (Ex. 5 to Fusonie Aff.). The accompanying "Statement of Financial Affairs" asked him to "list all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case." (Ex. 6 to Fusonie Aff.) (emphasis in original). Salyer, again under penalty of perjury, disclosed a collection proceeding and a foreclosure proceeding, but did not list his pending lawsuit against HAM. (Id.). According to Salyer, he did not include it because he understood "that the case was inactive and possibly . . . would not continue at all." (Salyer Aff. ¶ 5).

On May 31, 2005, Trustee Kellner conducted an oral examination of Salyer, under oath, regarding the information contained in the bankruptcy petition documents. (Kellner Aff. ¶ 4; Ex. 3 to Kellner Aff.). Salyer testified that the documents were accurate. (Kellner Aff. ¶ 6). Trustee Kellner specifically asked Salyer if he had spoken to any attorney other than his bankruptcy attorney in the preceding twelve months. Salyer testified that he met with another attorney in Cannizzaro's firm about a workers' compensation issue. (Id.). Salyer, however, said nothing about his pending lawsuit against HAM. (Id. at ¶ 7). According to Salyer, he did not mention his communications with Gary Reeve because he "interpreted the question to be directed at active legal claims that were being pursued on my behalf" and the suit against HAM was

3

inactive at that point. (Salyer Aff. ¶ 6). The Bankruptcy Court approved Salyer's repayment plan on August 19, 2005. (Kellner Aff. ¶ 8; Ex. 5 to Kellner Aff.).

On September 23, 2005, this Court issued an order granting in part and denying in part HAM's motion for summary judgment and motion for judgment on the pleadings. Still, Salyer made no effort to disclose the existence of the lawsuit to Cannizzaro or to the bankruptcy court. On December 19, 2005, when attorney Reeve met with Salyer to discuss responses to a discovery question concerning other court cases in which he was involved, Salyer finally disclosed to Reeve that he and his wife were parties in a bankruptcy proceeding. Reeve then contacted Cannizzaro about being appointed to represent Salyer in the instant action. (Reeve Aff. ¶¶ 4-5; Salyer Aff. ¶ 8). Cannizzaro submitted an application to Trustee Kellner but Kellner sent it back, explaining that it needed to be submitted directly to the bankruptcy court instead. (Kellner Aff. ¶ 9). On December 27, 2005, the bankruptcy court entered an agreed order placing the Salyers on payment probation. On February 13, 2006, the bankruptcy court dismissed Salyer's second bankruptcy case.

On April 19, 2006, HAM moved for summary judgment on grounds of judicial estoppel. HAM argues that because Salyer failed to disclose his claims against HAM in his bankruptcy proceedings, he should be barred from pursuing them.

**II.     Summary Judgment Standard**

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress

5

& Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson</u>, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." <u>Kendall v. Hoover Co.</u>, 751 F.2d 171, 174 (6th Cir. 1984). <u>See also</u> <u>Anderson</u>, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. <u>See also</u> <u>Leary</u>, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." <u>Hall v. Tollett</u>, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  Anderson, 477 U.S. at 252.  The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993).  The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence.  Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

**III.   Discussion**

HAM has moved for summary judgment on grounds of judicial estoppel.  Judicial estoppel is an equitable doctrine.  As explained by the Supreme Court, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position."  New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)).  See also Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1217 (6th Cir. 1990)("The doctrine of judicial estoppel forbids a party 'from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.'").  Judicial estoppel "preserves the integrity of the courts by preventing a party from abusing the judicial process though cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment."  Id. at 1218.

The Sixth Circuit Court of Appeals has stated that "[t]he doctrine of judicial estoppel bars

a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" Browning v. Levy, 283 F.3d 761, 775 (6th Cir. 2002) (quoting Teledyne, 911 F.2d at 1218).

In the bankruptcy context, the Sixth Circuit has held that "[p]ursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel." Lewis v. Weyerhaeuser Co., 141 Fed. Appx. 420, 425 (6th Cir. 2005). A debtor has a duty to disclose all assets, including potential causes of action, to the bankruptcy court. 11 U.S.C. § 521(1); Lewis, 141 Fed. Appx. at 424. See also Reynolds v. Commissioner of Internal Revenue, 861 F.2d 469, 474 (6th Cir. 1988)("when a bankruptcy court – which must protect the interests of all creditors – approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position.").

There is no question that both of the requirements for judicial estoppel are met in this case. On several different occasions in his bankruptcy proceedings, Salyer took the position under oath that he had no assets other than those he had disclosed to the bankruptcy court. When asked to list "contingent and unliquidated claims," and again when asked to list all suits to which he had been party within one year preceding the filing of his second bankruptcy petition, he failed to disclose his pending lawsuit against HAM. In addition, during Salyer's oral examination, when Kellner asked whether Salyer had spoken to any attorneys other than his bankruptcy attorney within the past year, he failed to disclose his communications with Gary Reeve concerning his suit against HAM. Salyer's pursuit of his claims against HAM is clearly

contrary to the position he asserted under oath in his bankruptcy proceedings. Moreover, in modifying and approving Salyer's repayment plans, and later dismissing the cases, the bankruptcy court clearly adopted Salyer's position. As the Sixth Circuit explained in Lewis, in approving a repayment plan, the bankruptcy court adopts the debtor's position that he has no potential causes of action. 141 Fed. Appx. at 425.

Salyer nevertheless argues that his claims should not be barred by the doctrine of judicial estoppel since his omissions resulted from a good-faith mistake. He maintains that he did not believe that he needed to disclose his suit against HAM to the bankruptcy court because he was informed by his attorney that the suit was on hold indefinitely and might, in fact, be dismissed.

The Sixth Circuit has held that "[j]udicial estoppel does not apply where the prior inconsistent position occurred because of 'mistake or inadvertence.'" Lewis, 141 Fed. Appx. at 425 (quoting Browning, 283 F.3d at 776). An omission may be deemed inadvertent where "the debtor lacks knowledge of the factual basis of the undisclosed claims," or "where the debtor has no motive for concealment." Browning, 283 F.3d at 776 (citing In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir. 1999). Salyer's omission was not inadvertent. He clearly understood the factual basis of his claims against HAM. Indeed, he could not have filed this lawsuit without such knowledge. Moreover, Salyer had a motive to conceal his claims against HAM since, as noted in Lewis, "it is always in a Chapter 13 petitioner's interest to minimize income and assets." 141 Fed. Appx. at 426.

Even though the Court concludes that Salyer's omission was not the result of "mistake or inadvertence," this does not necessarily mean that his claims are barred. The Sixth Circuit has held that "absence of bad faith" is another factor to be considered in determining whether to

9

apply the doctrine of judicial estoppel. Eubanks v. CBSK Financial Group, Inc., 385 F.3d 894, 895 (6th Cir. 2004). In Eubanks, the Sixth Circuit rejected application of the doctrine of judicial estoppel where, although plaintiffs' claim against defendant was not included on the schedule of assets, plaintiffs took several affirmative steps to make the bankruptcy court and the bankruptcy trustee aware of the existence of the claim before the bankruptcy action was closed. The Sixth Circuit found that because there was no evidence that plaintiffs were trying to defraud the court, the doctrine did not bar plaintiffs' claim. Id. at 898-99.

The Sixth Circuit also examined the "absence of bad faith" requirement in Lewis. Unlike the plaintiffs in Eubanks, Lewis made no effort to notify the bankruptcy court of her wrongful termination suit, filed just one month after her bankruptcy plan was approved. Lewis alleged that she relied in good faith on the advice of her attorney's paralegal who told her that she did not need to disclose her claim as an asset of the bankruptcy estate. The Sixth Circuit rejected this argument, holding that she was bound by the errors of her attorney. Lewis, 141 Fed. Appx. at 427. Lewis also stated in an affidavit that she had disclosed the existence of the claim to someone who worked in the office of her bankruptcy trustee. The court noted, however, that it was not clear if this conversation took place before defendant raised the issue of judicial estoppel. The court also noted that it was unclear whether the person Lewis talked to knew that the cause of action had been omitted from the bankruptcy petition. Id.

Moreover, the Sixth Circuit further found that the circumstances of Lewis's wrongful termination claim supported a finding that she had acted in bad faith and justified application of the doctrine of judicial estoppel. Lewis waited to file suit until shortly after her repayment plan was approved by the bankruptcy court. She also failed to disclose her earnings from her

previous employment with defendant. The court noted, "[w]hile a non-attorney may not know the exact nature of '[o]ther contingent and unliquidated claims of every nature,' . . . it is hard to believe that Lewis did not understand the language in the bankruptcy petition requiring her to disclose "the gross amount of income the debtor has received from employment . . . from the beginning of this calendar year to the date this case was commenced." Id. at 428.

In the instant case, Salyer denies that he acted in bad faith. He contends that he did not disclose his suit against HAM in his first bankruptcy case because that case was "in the process of being dismissed." (Salyer Aff. ¶ 2). As HAM notes, however, Salyer filed suit on October 13, 2004, seeking $1 million in damages. Kellner did not move to dismiss the bankruptcy case for failure to make the required payments until January 6, 2005. Had Salyer disclosed the pending lawsuit which, if successful, might have enabled him to make the required payments at some point in the future, the bankruptcy court might have modified or temporarily suspended the plan payments instead of dismissing the case.

As for his failure to disclose his claims against HAM in connection with the second bankruptcy case, Salyer contends that he was "confused." He filed the petition in April of 2005. Two months earlier, his attorney had told him that his case against HAM "was being stayed indefinitely." He maintains that he did not disclose it on his bankruptcy petition because it was his understanding that the case was inactive and might not continue at all. (Salyer Aff. ¶¶ 4-5). He argues that, as a layperson, he did not understand the concept of a "contingent asset" and did not realize that he had a duty to disclose his pending claims against HAM. (Id. at ¶ 7). As HAM notes, however, Salyer was represented by experienced counsel in both bankruptcy proceedings.

11

Furthermore, Salyer has not explained why he failed to disclose his suit against HAM on the "Statement of Financial Affairs," which asked him to "list all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case." There is nothing ambiguous about this question. It clearly states that the debtor must list <u>all</u> suits to which he was a party within the past year. Salyer disclosed a pending foreclosure proceeding and a closed collection proceeding, but failed to disclose his pending case against HAM. Regardless of whether the case was temporarily "inactive," there is no question that Salyer was a party to the suit within one year immediately preceding the filing of the bankruptcy petition. He therefore had a duty to disclose it and his failure to do so is, in the Court's view, indicative of a deceitful motive.

Moreover, when Kellner asked him under oath at the hearing on May 31, 2005, whether he had spoken to any attorney other than his bankruptcy attorney within the past year, Salyer said nothing about his communications with Gary Reeve who had filed the suit on his behalf against HAM just seven months earlier. (Kellner Aff. ¶¶ 6-7). Salyer contends that he did not disclose his conversations with Reeve because he "interpreted the question to be directed at active legal claims that were being pursued on my behalf" and the suit against HAM was inactive at that point. (Salyer Aff. ¶ 6). The Court agrees with HAM that this is a tortured interpretation of a very straight-forward question. It again leads the Court to believe that Salyer was being deceitful.

Even if the Court were to find that because Salyer's attorney told him that his case against HAM was inactive, Salyer honestly believed that he had no duty to disclose it in either bankruptcy proceeding, this still would not explain Salyer's failure to disclose the existence of

12

the pending suit once the Court issued its order on September 23, 2005 granting in part and denying in part HAM's dispositive motion. Even then, Salyer made absolutely no effort to disclose the pending suit to his bankruptcy attorney, his bankruptcy trustee, or the bankruptcy court.

It was not until December 19, 2005, when Salyer mentioned his bankruptcy proceedings to Gary Reeve, that his claims against HAM were finally brought to light. Although Reeve then made contact with Cannizzaro concerning appointment as counsel, it does not appear that Salyer made any effort to amend the bankruptcy petition or otherwise disclose the suit to Kellner or the bankruptcy court. For this reason, this case is clearly distinguishable from Eubanks. Unlike those plaintiffs, who made numerous attempts to ensure that the bankruptcy court was aware of the pending lawsuit, it appears that Salyer did everything he could to intentionally conceal the existence of his suit against HAM for as long as possible.

Based on the evidence presented, the Court concludes that Salyer's claims against HAM are barred by the doctrine of judicial estoppel. His pursuit of these claims is contrary to the position he asserted under oath in prior proceedings in bankruptcy court. The bankruptcy court adopted Salyer's prior position in approving the repayment plans and dismissing the bankruptcy cases. Salyer's failure to disclose his claims against HAM was not the result of mistake or inadvertence. Finally, based on the circumstances presented here, the Court does not find the requisite "absence of bad faith." As in Lewis, it appears that Salyer's repeated failure to disclose his claims against HAM was motivated by a desire to defraud and deceive the bankruptcy court. It would be inequitable to permit him to proceed any further.

**IV.     Conclusion**

For the aforementioned reasons, the Court **GRANTS** Defendant's motion for summary judgment on grounds of judicial estoppel.  (Record at 26).  The Clerk is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**


Date: November 6, 2006                                             **/s/ John D. Holschuh**
                                                                                         John D. Holschuh, Judge
                                                                                         United States District Court